IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LULA MELTON,

    Plaintiff,

vs.                                          CASE NO. 1:11-cv-218-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

    Defendant.
_____/

# O R D E R

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for supplemental security income benefits. Doc. 1. The Commissioner has answered, Doc. 8, and both parties have filed briefs outlining their respective positions. Docs. 12 and 13. For the reasons discussed below, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income benefits under Title XVI of the Social Security Act (the "Act") on March 4, 2009, alleging disability beginning March 4, 2009. Her application was denied initially and upon reconsideration. R. 74-77, 80-81. Plaintiff then filed a timely request for an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on February 17, 2011. R. 27-56. The ALJ issued a decision unfavorable to Plaintiff on March 17, 2011. R. 12-26. Plaintiff appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review on August 11, 2011. R. 1-4. Plaintiff filed the instant complaint on

October 11, 2011, asserting two grounds in opposition to the Commissioner's decision: (1) the ALJ committed reversible error by failing to include Plaintiff's chronic pain as a severe impairment; and (2) the ALJ violated the 11th Circuit's pain standard by disregarding a treating physician's opinion. Doc. 1. Pursuant to the parties' consent, the matter was referred to the undersigned in accordance with 28 U.S.C § 636(c). Doc. 7.

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16] However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot

---

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:
> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III. SUMMARY OF FINDINGS AND EVIDENCE

The ALJ's hearing decision (R. 15-23) reflects the following.  Plaintiff was 44 years old at the time she filed her application for benefits.  Plaintiff had little earnings history and past employment as a fast food cook, fast food worker, baker helper, and pre-school teacher.  Her application alleged disability due to back and neck injury, nerve damage in legs, and diabetes.  Plaintiff had not engaged in substantial gainful activity since the date of her application.

At step two of the sequential evaluation, the ALJ found that Plaintiff had the

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

following severe impairments: obesity, diabetes mellitus with lack of treatment, and hypertension. The ALJ found that Plaintiff's allegations of neck pain, low back pain, and ankle pain did not cause more than minimal limitations in her ability to perform work-related activities, and therefore such impairments were nonsevere. The ALJ concluded that there was no objective medical evidence to support Plaintiff's allegations of low back and neck pain. The ALJ found at step three that Plaintiff does not have an impairment or combination of impairments that meets or equals the listings, taking into account the effect of Plaintiff's obesity in conjunction with her impairments.

At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform light exertional work with a sit-stand option. In determining Plaintiff's RFC, the ALJ summarized Plaintiff's testimony at the hearing. Plaintiff testified that her diabetes, hypertension, and chronic back and neck pain result in fatigue, pain, dizziness, and a need to rest during the day. She testified that she experiences constant pain in her neck and back. She had recently sustained an ankle injury which required her to wear a cast temporarily. Plaintiff lived with her son and spent her time completing paperwork to obtain assistance and medication, and resting. Plaintiff testified that she was able to drive, shop, and prepare simple meals. She testified that she takes Tramadol, Percocet, and Ibuprofen for pain, and that her medications cause side effects of upset stomach, nausea, and diarrhea. She testified that she receives her medication from the Health Department, Shands, and her church, but does not have testing supplies for her diabetes.

The ALJ discussed Plaintiff's medical records. On May 19, 2009, agency consulting physician Dr. Eftim Adhami examined Plaintiff; she complained of neck pain

without radiation, mid and low back pain, right sciatic nerve pain, legs swelling and giving out, and heel spurs. Dr. Adhami's examination revealed no lumbar paravertebral muscle spasm, normal straight leg raising, normal sensation, and full muscle strength. Plaintiff had full range of motion throughout her body and was able to pick up small objects and button clothing. Her gait was normal. He diagnosed obesity, diabetes (under treatment), initial stages of cataracts, hypretension, hyperlipidemia, mild degenerative disease of the neck with no radiculopathy, heel spurs, and mild asthma. R. Exh. 2F.

Plaintiff's records from the Health Department from June 2009 to September 2010 noted high blood pressure, high glucose levels, and medication noncompliance. In June 2009, Plaintiff reported that she had been without medication for a few months. In September 2009, Plaintiff had high sugar levels and blood pressure, and she complained of back pain stemming from an insect bite. She was diagnosed with hypertension, diabetes, hypercholesterolemia, and dry eyes. R. Exh. 3F, 5F.

In August 2010, Plaintiff was treated at Shands ED for a headache; she was discharged in improved condition after four hours. She returned on September 2, 2010 with complaints of chest pain and shortness of breath that were found to be non-cardiac. On September 21, 2010, she presented with left shoulder pain following an injury on a city bus. No abnormality was found on x-ray. R. Exh. 6 F.

In November 2010, Plaintiff reported taking the following medication in an updated disability report: Glipizide; Indopamide; Atentol; Avandia; Pravastatin; Metformin; Ibuprofen; Flexeril; and Tylenol. R. Exh. 14E.

Based on the evidence in the record, the ALJ concluded that Plaintiff's medically

determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements regarding the intensity, persistence and limiting effects of her symptoms were not credible.  The ALJ questioned whether Plaintiff's limited earnings record stemmed from her medical conditions.  She noted that Plaintiff's treatment had been conservative and routine, and pointed to Plaintiff's noncompliance with diabetes and hypertension management as evidence that her symptoms may not be as limiting as alleged.  Based on such noncompliance, the ALJ observed that Plaintiff's alleged fatigue could be attributed to poorly-managed diabetes and hypertension.  The ALJ noted that Plaintiff receives assistance from her church in paying for pain medications but not for diabetes test strips.

The ALJ concluded that there was no objective medical evidence that supported Plaintiff's claims of neck and back pain, and no evidence in the records of restrictions placed on Plaintiff by treating physicians on account of her allegations of disabling symptoms.   The ALJ afforded great weight to the opinions of Plaintiff's treating physicians, as well as great weight to the opinion of the consultative examiner who performed a thorough examination and rendered an opinion that was consistent with the record as a whole.  The ALJ gave limited weight to a State agency evaluator's opinion that found Plaintiff to be more limited than the ALJ's assessment.

The ALJ determined that Plaintiff could not return to her past relevant work.  The ALJ noted that at the hearing a VE testified that Plaintiff could not perform any of her past relevant work in view of her age, education, experience, and RFC.  The ALJ determined that Plaintiff's limitations prevented her from performing the full range of light work.  The VE testified that  Plaintiff could perform such light and sedentary-duty

occupations as parking lot attendant, ticket seller, and order clerk.

## IV.  DISCUSSION OF ISSUES PRESENTED

### 1.  Determination that chronic pain was not severe impairment

Plaintiff argues that her treating physician prescribed the synthetic narcotic pain medication Tylox in 2007 and 2008, clearly establishing that she has disabling pain. Doc. 12 at 7.

In *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit and adequate reasons, and these reasons must be based on substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  A clearly articulated credibility finding with substantial supporting evidence in the record should not be disturbed by a reviewing court.  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

As the Commissioner points out, there are no records reflecting that Plaintiff took Tylox during the relevant time period, after her alleged onset date.  In assessing Plaintiff's credibility with respect to allegations of disabling pain, the ALJ considered Plaintiff's assertion of constant back and neck pain, and her claims regarding the negative side effects of the Tramadol, Percocet, and Ibuprofen that she was taking for pain.  Although Plaintiff initially reported chronic pain as a problem to the Health

Department on her first visit and included "slipped disks" in her self-reported medical history (R. 285-90), as the ALJ pointed out there is no objective medical evidence in the record that documents any condition that would cause such pain. Subsequent Health Department records do not include "chronic pain" as a problem, nor do Plaintiff's records reflect that she complained about any negative side effects from pain medication. R. 302, 316.

The ALJ also pointed to Plaintiff's poor work history as suggesting lack of credibility regarding her claim of inability to work due to her medical conditions. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (claimant's credibility undermined by poor work history) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993)). Further, Dr. Adhami's examination of Plaintiff revealed essentially normal findings, with no indication of any condition that would cause disabling pain. State Agency consulting physician Dr. Krishnamurthy opined after assessing Plaintiff's records that she had fewer limitations than those determined by the ALJ. R. 18, 21.

The Court, therefore, concludes that the ALJ articulated explicit and adequate reasons for rejecting Plaintiff's allegation of disabling pain, and that such reasons are supported by substantial evidence.

### 2. Treating physician's opinion

Plaintiff contends that the ALJ erred by failing to afford great weight to Plaintiff's treating physician's opinion that she required narcotics to cope with chronic pain.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is

shown to the contrary.[21]  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[22]

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.[23]  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[24]

Plaintiff's medical records prior to her alleged disability onset date reflect that she reported Tylox as one of her medications.  R.213, 241, 260, 271.  The records relate to treatment for chest pain and dyspnea, right heel pain, and vaginal bleeding.  *Id*.  Notably, there are no treating physician records documenting an opinion that Plaintiff required narcotic pain medication for the neck and back pain upon which her disability claim is based.  Moreover, there are no records reflecting that Plaintiff continued to take Tylox after her alleged disability onset date.   Accordingly, on this record, there was no

---

[21] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[22] 20 C.F.R. § 404.1527(d)(2).

[23] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

[24] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

basis for the ALJ to accord "great weight" to the fact that Plaintiff had been prescribed Tylox prior to her disability onset date.

## VI. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the decision of the Commission denying benefits is **AFFIRMED.** The clerk is directed to enter final judgment and close the file.

**DONE AND ORDERED** this 14th day of February 2013.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge